# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## CASE NO.  11-60443-CIV-ALTONAGA

**UNITED STATES OF AMERICA**,

      Plaintiff,

vs.

**DANIEL F. IWANSKI**,

      Defendant.

_____/

## ORDER

    **THIS CAUSE** comes before the Court on Plaintiff, United States of America's ("Plaintiff['s]" or "United States[']") Renewed Motion for Summary Judgment ("Motion") [ECF No. 35], filed on July 15, 2011.  On July 28, 2011, Defendant, Daniel F. Iwanski, filed his Response [ECF No. 36] to Plaintiff's Motion.  The Court has carefully reviewed the parties' written submissions, the record, and applicable law.

## I. BACKGROUND

    On or about November 5, 1990 and December 21, 1990, Defendant executed two promissory notes through Citibank, in the amounts of $2,625.00 and $4,000.00, respectively, for the cost of his education.  (*See* Promissory Notes 7–10 [ECF No. 35]; Decl. of Michael Illes ¶ 2 [ECF No. 35]).  These notes were guaranteed by the United Student Aid Funds, Inc., and were then reinsured by the Department of Education under loan guaranty programs authorized by Title IV-B of the Higher Education Act of 1965 ("HEA"), as amended, 20 U.S.C. §§ 1071–1087-2.  (*See* Decl. of Michael Illes ¶ 3).  Defendant defaulted on his payment obligations beginning on April 29, 1993 and October 29, 1992.  (*See id.* ¶ 4).

Case. No. 11-60443-CIV-ALTONAGA/Simonton

On March 1, 2011, Plaintiff filed a Complaint against Defendants seeking money damages in the amount owed on these federally guaranteed student loans. (*See* Compl. [ECF No. 1]). In the Motion, Plaintiff asks the Court to enter summary judgment in favor of the United States and against Defendant in the full amount set forth in the Complaint. (*See* Mot. 1). In his Response, Defendant apparently concedes the issue of his indebtedness, but contends that various circumstances excuse him from his obligations to repay the notes or preclude the United States from collecting the amounts owed. (*See* Resp.).

## II.  LEGAL STANDARD

In general, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "Once the moving party demonstrates the absence of a genuine issue of material fact, the non-moving party must 'come forward with specific facts showing that there is a genuine issue for trial.'" *United States v. Jallali*, No. 08-22774-CIV, 2011 WL 65888, at *2 (S.D. Fla. Jan. 10, 2011) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party," *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997), and "must resolve all reasonable doubts about the facts in favor of the non-movant," *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am.*, 894 F.2d 1555, 1558 (11th Cir. 1990).

Case. No. 11-60443-CIV-ALTONAGA/Simonton

In opposing a motion for summary judgment, the non-moving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue for trial.  *See* FED. R. CIV. P. 56(c), (e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  A mere "scintilla" of evidence supporting the opposing party's position will not suffice; instead, there must be a sufficient showing that the jury could reasonably find for that party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *see also Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

### III.  ANALYSIS

In the instant case, the United States has sued Defendant to recover the proceeds of an allegedly defaulted student loan.  (*See* Compl. [ECF No. 1]).  In support of its Motion, Plaintiff has submitted Defendant's promissory notes and the affidavit of a loan analyst employed by the Department of Education, which show the principal amount due is $7,394.97, along with accrued interest of $10,710.97.  (*See* Promissory Notes 7–10; Declaration of Michael Illes ¶¶ 1–6).  The evidence clearly establishes that Defendant signed the promissory notes, funds were disbursed on his behalf, payment on the notes is past due, and $18,216.40 are due and owing on the notes as of July 12, 2011.  Defendant has not presented any evidence to contradict these facts.

The only facts presented by Defendant to rebut Plaintiff's initial showing are the denials contained in Defendant's Answer (*see* Answer [ECF No. 8]), and in his Statement of Undisputed Fact ("SUF") (*see* [ECF No.35]).  Nonetheless, "a party opposing a properly supported motion for summary judgment may not rest upon [the] mere allegation[s] or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby*

3

Case. No. 11-60443-CIV-ALTONAGA/Simonton

*Inc.*, 477 U.S. 242, 248 (1986). "Under Rule 56, the proper materials for supporting or opposing summary judgment include 'depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials.'" *United States v. Arana*, No. 11-20172, 2011 WL 1348412, at *2 (S.D. Fla. Apr. 8, 2011) (quoting FED. R. CIV. P. 56(c)(1)(A)); *see also* S.D. FLA. L.R. 7.5(c) (requiring "specific references to pleadings, depositions, answers to interrogatories, admissions, and affidavits on file with the Court" to support or oppose summary judgment). Defendant has submitted no such materials. Therefore, there is no issue or material fact regarding whether Defendant is liable on the promissory notes.

Once a plaintiff has established liability, the burden shifts to the defendant to establish a valid defense to his liability. *See United States v. Irby*, 517 F.2d 1042, 1043 (5th Cir. 1975). In his Answer, Defendant does not raise a single defense. (*See* Answer). However, in his Response Defendant raises, for the first time, two "defenses" to liability. (*See* Resp. 3–12). First, Defendant asserts summary judgment should not be granted because Plaintiff failed to comply with certain provisions of the HEA. (*See id.* 3–7). Second, Defendant contends Plaintiff's "unclean hands" prevents the Court from entering judgment in favor of Plaintiff. (*See id.* 7–12). In addition, Defendant maintains the Court should stay entry of judgment until the resolution of a case currently pending between Defendant and Plaintiff's attorneys. (*See id.* 13). The Court addresses each of these asserted "defenses" in turn.

### A. Higher Education Act

Defendant maintains summary judgment cannot be entered against him because Plaintiff has failed to comply with the pre-litigation requirements and collection regulations set forth in the HEA

Case. No. 11-60443-CIV-ALTONAGA/Simonton

and the corresponding federal regulations promulgated by the Secretary of Education.  (*See* Resp. 3–7).  Essentially, Defendant asserts he should be excused from his obligations to repay the notes (or that the United States should be barred from pursuing its claims against him) because Plaintiff and/or its attorneys did not comply with the HEA.  (*See id.*).  In particular, Defendant contends Plaintiff failed to comply with the notice provisions of 34 C.F.R. § 682.410 and the pre-litigation requirements of 34 C.F.R. § 682.507.  This argument fails, however, because neither the HEA nor the related regulations apply to the federal government, nor do they provide a student borrower with a basis to avoid debt obligations.

"In enacting the HEA, Congress expressly provided a detailed regulatory scheme which confers on the Secretary of Education the exclusive authority to monitor and enforce the provisions of the HEA."  *McCulloch v. PNC Bank Inc.*, 298 F.3d 1217, 1223 (11th Cir. 2002).  In doing so, "Congress specifically considered the possibility that lenders may not comply with provisions of the HEA, and established enforcement mechanisms whereby the Secretary of Education can monitor and sanction non-compliance."  *Id.* (citing 20 U.S.C. §§ 1082(g), (h); 34 C.F.R. §§ 668.81–.97, 682.413(c)).  Defendant's defense is based on the premise that these enforcement mechanisms are applicable to the United States, and that Plaintiff's violations of certain provisions of the HEA prevent it from collecting the debt owed by Defendant.  (*See* Resp. 4).  In support of his argument, Defendant cites *United States v. Rhodes*, 788 F. Supp. 339 (E.D. Mich. 1992) (*see* Resp. 5–6), a case "from the sole district representing the minority view [on this issue] — the Eastern District of Michigan."  *United States v. Lewis*, No. 01-2006-JWL, 2001 WL 789224, at *3 (D. Kan. 2001).  In *Rhodes*, the court granted the student debtor's summary-judgment motion because, among other

5

Case. No. 11-60443-CIV-ALTONAGA/Simonton

things, the government failed to produce evidence of the lender's collection efforts. *See Rhodes*, 788 F. Supp. at 343. As several courts have noted, however, "*Rhodes* did not address in any way whatsoever the appropriateness of such a defense." *Lewis*, 2001 WL 789224, at *3; *see United States v. Dwelley*, 59 F. Supp. 2d 115, 119 (D. Me. 1999).

Moreover, the majority of courts analyzing this issue have found that the HEA is in place "solely to govern the relationship between insured lenders and the United States." *Dwelley*, 59 F. Supp. 2d at 119. In particular, these courts have consistently held that the HEA does not apply to the federal government, does not create a private right of action for student borrowers, and does not provide borrowers with a basis to avoid their debt. *See United States v. Lotocki*, No.3:06CV01580, 2007 WL 2384413, at *3 (D. Conn. Aug. 18, 2007) ("[T]he statutory due diligence requirements exist for the benefit of the government, and do not give the borrower the right to void his debt."); *Dwelley*, 59 F. Supp. 2d at 119 (finding "[t]he weight of authority from other jurisdictions . . . indicates that these provisions are in place solely to govern the relationship between insured lenders and the United States and therefore do not enable a cause of action for student borrowers"); *United States v. Singer*, 943 F. Supp. 9, 12 (D.D.C. 1996) ("The statute and regulations do not, however, give the borrower any basis for avoiding his debt based on the failure of the lender to properly service the loans."), *aff'd in part, rev'd in part on other grounds*, 132 F.3d 1482 (D.C. Cir. 1997); *United States v. Smith*, 862 F. Supp. 257, 262 (D. Haw. 1994) ("The due diligence statutes exist for the government's benefit, to ensure that the lender seeks recovery from the borrower before the lender makes a claim against the insurance . . . [T]he statute does not give the borrower the right to void his debt simply because he is now dissatisfied with the lender's collection practices."); *Phillips*

6

Case. No. 11-60443-CIV-ALTONAGA/Simonton

*v. Pa. Higher Educ. Assistance Agency*, 497 F. Supp. 712, 723 (W.D. Pa. 1980) ("It would be anomolous [sic] to hold that a provision enacted for the benefit of the federal government creates a private cause of action for defaulting students."), *rev'd on other grounds*, 657 F.2d 554 (3rd Cir. 1981); *see also McCulloch*, 298 F.3d at 1221 (listing cases that have found no express right of action under the HEA); *O'Rourke v. Duncan*, No. 4:10–CV–957 (CEJ), 2011 WL 1297546, at *6 (E.D. Mo. Mar. 31, 2011) (holding that the federal regulations related to the HEA "govern the duties owed by creditors holding student loans notes guaranteed by the United States but do not create a private cause of action for a student debtor"); *United States v. Foley*, No. 08-4251, 2009 WL 2960752, at *2 (D. Minn. Sept. 10, 2009) (finding HEA's provisions "govern the relationship between the lenders and the United States, and do not create a private right of action or affirmative defense for student loan debtors"); *United States v. Tuerk*, No. 05-CV-06088, 2007 WL 916866, at *2 (E.D. Pa. Mar. 20, 2007) (same); *Lewis*, 2001 WL 789224, at *3 (same).  Additionally, at least one judge in the Eastern District of Michigan, after *Rhodes*, has expressly held that "discharge of the debt is not provided as a remedy" for violating the HEA.  *United States v. Gould*, No. 06-10310, 2006 WL 1522071, at *2 (E.D. Mich. May 30, 2006).

Based on the above-cited cases and the rationale underlying those decisions, the Court finds the HEA exists for the benefit of the United States and does not give a borrower the right to void his debt.  As a result, Defendant's assertion that Plaintiff has violated the HEA does not constitute a valid defense to Plaintiff's claim.

**B.  Unclean-Hands Defense**

Defendant's second defense is that Plaintiff has "unclean hands" as a result of Plaintiff's

counsel's violation of the Fair Debt Collection Practices Act ("FDCPA"), and therefore Plaintiff is precluded "from benefitting and/or profiting from its law firm debt collector's illegal action." (Resp. 2). This defense is equally deficient.

Essentially, Defendant's argument is that Plaintiff's agent used debt collection methods that violated the FDCPA, and therefore, Defendant is not liable for the debt owed to Plaintiff. This argument fails for several reasons. First, Plaintiff has provided the Court with no authority for holding Defendant vicariously liable under the FDCPA for the acts of its attorneys. More importantly, even if Plaintiff could be held liable for its counsel's violation of the FDCPA, a violation of that statute does not relieve Defendant of his obligation to pay the underlying debt. *See Vitullo v. Mancini*, 684 F. Supp. 2d 760, 764 (E.D. Va. 2010) ("The statute's remedial scheme does not envision, and indeed does not permit, courts to cancel or extinguish debts as a remedy for FDCPA violations."). Instead, the FDCPA allows a debtor to recover as damages "any actual damage sustained" as a result of the violation and any "additional damages as the court may allow, but not exceeding $1,000." 15 U.S.C. § 1692k(a). Nothing in the FDCPA suggests that a borrower can have his debt extinguished or cancelled in lieu of recovering damages.[1] Thus, this is not a valid

---

[1] Under the *expressio unius est exclusio alterius* canon of statutory construction, "the method prescribed in a statute for enforcing the rights provided in it is . . . presumed to be exclusive," 2A SUTHERLAND STATUTES AND STATUTORY CONSTR. § 47:23 (7th ed.), absent strong legislative history and contextual indications to the contrary, *see United States v. Castro*, 837 F.2d 441, 442–43 (11th Cir. 1988). *See also Alexander v. Sandoval*, 532 U.S. 275, 290 (2001) ("The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others."); *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 19 (1979) ("[I]t is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it."); *Christ v. Beneficial Corp.*, 547 F.3d 1292, 1298 (11th Cir. 2008) ("Where Congress has provided a comprehensive statutory scheme of remedies, as it did here, the interpretive canon of *expressio unius est exclusio alterius* applies."). Here, Defendant does not identify, and the Court cannot find, any indication in the legislative history or context of the statute that the enumerated remedies are not meant to be exclusive.

Case. No. 11-60443-CIV-ALTONAGA/Simonton

defense in the instant action.

### C. Stay of Proceedings

Lastly, Defendant contends the Court should stay entry of judgment pending resolution of a case between Defendant and Plaintiff's counsel currently before Judge Ursula Ungaro, regarding Plaintiff's counsel's violation of the FDCPA.  (*See* Resp. 12–14); *Iwanski v. Becker & Poliakoff, P.A.*, Case No. 1:11-cv-22108-UU (S.D. Fla.) ("FDCPA Case").  Specifically, Defendant states:

> the defense relied upon by Defendant [in the instant case] is dependant [sic] on the [FDCPA] action in the sister court. . . . If this Court believes that Plaintiff may have dirtied its hands with regards to the underlying issue, then this Court should let its sister decide the FDCPA dispute before casting judgment.

(Resp. 13).  The claim currently before the Court is in no way dependent on the FDCPA claim before Judge Ungaro.  The claim in the instant action involves a dispute between the United States and Defendant over the recovery of debt owed by Defendant.  In contrast, the FDCPA case is between Defendant and Plaintiff's counsel, arises from actions allegedly taken by Plaintiff's counsel, and does not involve Plaintiff in any way.  Moreover, as discussed, even if Plaintiff's counsel is found to have violated the FDCPA, that finding has no effect on Defendant's obligation to pay the United States. *See* Part III.B., *supra*.  Accordingly, a stay is unwarranted.

### IV.  CONCLUSION

Defendant provides no legal support for his claim that the alleged misconduct of Plaintiff or Plaintiff's attorneys absolves him of his obligation to pay the United States. Because Plaintiff has demonstrated there are no genuine issues of material fact that would preclude summary judgment, and Defendant has not raised any valid affirmative defenses, summary judgment is appropriate. Therefore, it is

Case. No. 11-60443-CIV-ALTONAGA/Simonton

**ORDERED AND ADJUDGED** that Plaintiff's Motion for Summary Judgment **[ECF No. 35]** is **GRANTED**.  Summary judgment is entered in favor of Plaintiff.  A final order of judgment will be entered pursuant to this Order.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 3rd day of August, 2011.

**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record